# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Roberto M. D.,

      Petitioner,

v.

Merrick Garland, U.S. Attorney General,

Alejandro Mayorkas, Secretary of Homeland
Security,

Tad E. Johnson, Acting Director, Immigration
and Customs Enforcement,

Marcos Charles, Director, St. Paul Field Office,
Immigration and Customs Enforcement, and

Joel Brott, Sheriff, Sherburne County,

      Respondents.

Case No. 21-cv-1343 (NEB/TNL)

**REPORT &
RECOMMENDATION**

---

Roberto M. D., Kandiyohi County Jail, 2201 23rd Street NE, Suite 101, Willmar, MN
56201 (pro se Petitioner);

Ana H. Voss, Assistant United States Attorney, United States Attorney's Office, 300
South Fourth Street, Suite 600, Minneapolis MN 55415 (for Respondents Garland,
Mayorkas, Johnson, Charles, and Brott).

---

## I.  INTRODUCTION

This matter comes before the Court on Roberto M. D.'s ("Petitioner") Amended

Petition for Writ of Habeas Corpus ("Amended Petition") (ECF. No. 7). The Amended

Petition has been referred to the undersigned for a report and recommendation to the district

1

court, the Honorable Nancy E. Brasel, United States District Judge for the District of Minnesota, pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

Based upon the record, memoranda, and proceedings herein, **IT IS HEREBY RECOMMENDED** that the Amended Petition be **GRANTED IN PART** and **DENIED IN PART** as set forth below.

## II.  BACKGROUND

Petitioner is a native and citizen of Mexico.  (Am. Pet. ¶ 17.)  Petitioner first entered the United States near Lukeville, Arizona, in April 2004 without inspection, admission, or parole.  (Decl. of Immigration and Customs Enforcement Officer James L. Van Der Vaart ("Van Der Vaart Decl.") ¶ 4, ECF No. 10.)  After a string of criminal convictions, Petitioner was placed into removal proceedings in 2004.  (*Id.* ¶¶ 6-8.)  On December 14, 2005, an immigration judge ("IJ") granted Petitioner a voluntary return to Mexico. (*Id.* ¶¶ 11-12.).

In April of 2006, Petitioner attempted to re-enter the United States at a Border Patrol checkpoint south of Falfurrias, Texas.  (*Id.* ¶ 13.)  He was stopped and voluntarily returned to Mexico again.  (*Id.*)  Around October 1, 2006, Petitioner returned to the United States through Eagle Pass, Texas.  (Gov't's Ex. 1 at 101, ECF No. 10-1.)

In March of 2019, Petitioner was arrested by the Fridley Police Department for driving after revocation of his license.  (Van Der Vaart Decl. ¶ 15.)  Immigration and Customs Enforcement ("ICE") Officers took Petitioner into custody after his release from Anoka County Jail.  (*Id.* ¶ 17.)  He was then served with a Notice to Appear for Removal Proceedings and a Notice of Custody Determination, which found that he would be held in

custody pending a final decision on whether he would be removed from the United States. (*Id.* ¶ 18.)

Petitioner requested an individualized bond redetermination hearing before an IJ and was represented by counsel for that hearing. (*Id.* ¶ 19.) He was released on a bond of $7,500 and his removal proceedings were scheduled for a new date. (*Id.*)

On July 7, 2020, the West St. Paul Police Department issued Petitioner a citation charging him with four misdemeanors, including two counts of domestic assault. (Gov't's Ex. 1 at 67; Van Der Vaart Decl. ¶ 21.) Then, on September 22, 2020, Saint Paul Police arrested Petitioner for felony threats of violence stemming from an incident where he threatened to kill his ex-wife with a machete.[1] (Gov't's Ex. 1 at 13-37 (Saint Paul Police Department incident reports); Van Der Vaart Decl. ¶ 22.) This incident was witnessed and reported by Petitioner's minor children. (Gov't's Ex. 1 at 18.) A machete was found in the room that Petitioner was found in when the police arrived. (*Id.* at 19.)

On December 16, 2020, ICE received the Saint Paul Police Department report detailing the incident and sent Petitioner a bond demand letter. (Van Der Vaart Decl. ¶¶ 23-24.) When Petitioner reported to ICE on January 6, 2021, he was taken into custody. (*Id.*) ICE informed Petitioner that he was being taken into custody "due to his recent arrest for Felony Threats of Violence." (Gov't's Ex. 1 at 39; *see also id.* at 46.)

---

[1] Petitioner was charged in Ramsey County District Court with one count of threats of violence – reckless disregard risk, a felony, in violation of Minnesota Statutes § 609.713, Subdivision 1, on September 23, 2020. (Gov't's Ex. 1 at 60-65.)

Petitioner again requested an individualized bond redetermination hearing before an IJ. (*Id.* at 42.) This was conducted on March 1, 2021. (*Id.* at 95.) Petitioner was represented by counsel at his hearing. (Van Der Vaart Decl. ¶ 25.) The IJ found him to be a danger to persons/property and denied his request for bond. (*Id.*; Gov't's Ex. 1 at 95.) This decision was not appealed to the Board of Immigration Appeals ("BIA"). (Van Der Vaart Decl. ¶ 25.)

On May 10, 2021, an IJ at Fort Snelling issued a written decision on Petitioner's removability. (*Id.* ¶ 26; Gov't's Ex. 1 at 97-121.) The IJ denied asylum, withholding of removal under the Immigration and Nationality Act, and withholding of removal under the Convention Against Torture, and ordered Petitioner to be removed to Mexico. (*Id.*) Petitioner appealed this decision to the BIA. (Van Der Vaart Decl. ¶ 27.) The appeal is still pending. (*Id.*; Gov't's Ex. 1 at 158, 181.)

On July 13, 2021, Petitioner filed the Amended Petition currently before the Court. (ECF No. 7.) On August 6, 2021, ICE turned Petitioner over to Dakota County pursuant to a writ of habeas corpus *ad prosequendum*. (Gov't's Ex. 1 at 186.) On August 12, 2021, following a jury trial, Petitioner was convicted in Dakota County District Court of the four misdemeanors he was charged with in July 2020: domestic assault with intent to cause fear; domestic assault with intent to inflict harm; disorderly conduct; and fourth degree criminal damage to property. (*Id.* at 187-88.) He was sentenced to 90 days with credit for time served. (*Id.* at 187.) On August 16, 2021, he was returned to ICE custody. (Van Der Vaart Decl. ¶ 31.)

On December 2, 2021, Petitioner pleaded guilty to the threats of violence charge related to the September 22, 2020 incident. *See* Pet. to Enter Guilty Plea, *available at Minnesota Court Records Online ("MCRO")*, https://publicaccess.courts.state.mn.us/CaseSearch (enter case number 62-CR-20-6089) (last visited Dec. 28, 2021). The same day, Petitioner was convicted of the charge, a gross misdemeanor pursuant to a downward dispositional departure, and sentenced to 360 days in the Ramsey County Correctional Facility, with credit for time served. *See* Sentencing Order, *available at MCRO*, https://publicaccess.courts.state.mn.us/CaseSearch (enter case number 62-CR-20-6089) (last visited Dec. 28, 2021). As of the date of this Report and Recommendation, there are no filings indicating that Petitioner has been released from ICE custody or that the BIA has issued a decision on Petitioner's appeal.

## III. ANALYSIS

### A. Standard of Law

"A writ of habeas corpus enables a person detained by the government to challenge the legality of his confinement and, if successful, obtain his release." *Abdulkadir A. v. Sessions*, No. 18-cv-2353 (NEB/HB), 2018 WL 7048363, at *2 (D. Minn. Nov. 13, 2018) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973)), *report and recommendation adopted*, 2019 WL 201761 (D. Minn. Jan. 15, 2019). Federal courts have jurisdiction to hear habeas challenges to the lawfulness of immigration-related detentions under 28 U.S.C. § 2241. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Denmore v. Kim*, 538 U.S. 510, 516-17 (2003).

The Court liberally construes the Amended Petition in light of Petitioner's pro se status.  *See Frey v. Schuetzle*, 78 F.3d 359, 361 (8th Cir. 1996); *cf. Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004) (finding that pro se complaints are to be construed liberally). Petitioner appears to challenge the individual decision of the IJ in making his bond determination, calling the decision "arbitrary, capricious, [and an] abuse of discretion . . . unsupported by substantial evidence"[2] (*see* Am. Pet. at 10); the bulk of the Amended Petition, however, appears to focus on Petitioner's various arguments that the statutory and regulatory scheme authorizing his detention violates his right to due process.  (*See generally* Am. Pet.)

Petitioner raises 10 causes of action in his Amended Petition.[3]  (Am. Pet. at 10-15.) These include a violation of the Administrative Procedure Act ("APA"); six counts of violation of the Fifth Amendment's right to due process;[4] "contempt of court by ignoring a judicial order and substituting it with an executive order;" violation of separation of powers; and "comity and federalism concern[s]."  (*Id.*)  Petitioner requests various forms of relief, including that he be immediately released from custody, or, in the alternative, be allowed another bond hearing before an IJ in which the Government "shall bear the burden of proof by clear and convincing evidence" that he is a flight risk or poses a danger to the community.  (*Id.* at 2, 16-17.)  As best as this Court can tell from the Amended Petition,

---

[2] (*See also* Am. Pet. at 9 (arguing that his then-pending felony charge "cannot be . . . used as a basis to predict his future dangerousness in order to justify his . . . detention.").)

[3] The Court notes that Petitioner skips a Count Eight and thus ends his list of causes of action at Count Eleven.  (*See* Am. Pet. at 14-15.)

[4] In one of these counts, Petitioner seems to combine an equal protection claim with a due process claim, arguing that he has been impermissibly barred from the same procedural protections as criminal detainees under the Bail Reform Act.  (*See id.* at 12-13.)

these 10 causes of action fall into four categories: (1) general challenges to placing an alien in civil custody and the procedures set forth by the Government to do so; (2) challenges to the IJ's individual determination that Petitioner should remained detained; (3) challenges to the allocation of the burden of proof at the bond hearing; and (4) an Administrative Procedures Act claim.

### B. Petitioner's Custody Status, Due Process, and Other Cursory Claims

Both parties agree that Section 1226(a) currently governs Petitioner's detention.[5] (Am. Pet. ¶ 7; Gov't's Resp. at 5, ECF No. 9.) "Section 1226 provides for detention of aliens pending a decision on whether or not an alien is to be removed from the United States." *Amreya R.S. v. Barr*, No. 19-cv-3042 (NEB/LIB), 2020 WL 2770942, at *3 (D. Minn. May 6, 2020), *report and recommendation adopted*, 2020 WL 2769278 (D. Minn. May 28, 2020). Section 1226(a) "supplies a general rule giving the Government discretion to detain any aliens pending a removal determination" and "[t]he statute itself places no limit on the length of time an alien may be detained during the pendency of removal

---

[5] It is possible that at some point in the future, Petitioner could be found to be detained pursuant to Section 1226(c) given his recent gross misdemeanor conviction for threats of violence in state court. *See* 8 U.S.C. §§ 1226(c)(A); 1182(a)(2). Section 1226(c) mandates the detention of certain criminal aliens during their removal proceedings. *Jennings v. Rodriguez*, 138 S. Ct. 830, 846 (2018); *Denmore*, 538 U.S. at 517-18, 527-28.

Notwithstanding his recent conviction, Petitioner has a right to appeal. *See* Minn. R. Crim. P. 28.05, Subd. 4(3)(a) (giving Petitioner 90 days to file a notice of appeal). In *Matter of Acosta*, the BIA determined that "a conviction does not attain a sufficient degree of finality for immigration purposes until the right to direct appellate review on the merits of the conviction has been exhausted or waived." 27 I. & N. Dec. 420, 432 (BIA 2018) (footnote omitted). Thus, given the record before it, and noting that neither Petitioner nor the Government has supplemented the record since Petitioner's conviction, the Court proceeds in its analysis with the understanding that, though circumstances may change, Petitioner is currently detained pursuant to Section 1226(a). *See Melie I. v. McAleenan*, No. 18-cv-1657 (ECT/HB), 2019 WL 2367161 (D. Minn. June 5, 2019) (discussing shift in basis for detention after a petitioner's conviction for an aggravated felony may have been finalized).

proceedings." *Gilo O.G. v. Barr*, No. 19-cv-1339 (PJS/DTS), 2019 WL 5057544, at *3

(D. Minn. Aug. 28, 2019) (citing *Jennings*, 138 S. Ct. at 846-47). Section 1226(a) provides:

> On a warrant issued by the Attorney General, an alien may be
> arrested and detained pending a decision on whether the alien
> is to be removed from the United States. Except as provided in
> subsection (c) and pending such decision, the Attorney
> General—
>
> (1)    may continue to detain the arrested alien; and
>
> (2)    may release the alien on—
>
> (A)    bond of at least $1,500 with security approved by, and
> containing conditions prescribed by, the Attorney General; or
>
> (B)    conditional parole[.]

8 U.S.C. § 1226(a).

Further, an alien detained under Section 1226(a) "may seek review of his detention

by an officer at the Department of Homeland Security and then by an immigration judge."

*Nielsen v. Preap*, 139 S. Ct. 954, 959-60 (2019) (citing 8 C.F.R. §§ 236.1(c)(8) and (d)(1);

1003.19(a); 1236.1(d)). An immigration judge's discretionary decision to grant, revoke,

or deny bond is not subject to judicial review. 8 U.S.C. § 1226(e).

A review of the record shows that the Government comported with the statute and

corresponding regulations when ICE took Petitioner into custody on January 6, 2021. *See*

8 U.S.C. § 1226(a)(1), (2); 8 C.F.R. § 236.1(g)(1). Petitioner then requested and received

a bond hearing before an IJ where he was represented by counsel on March 1, 2021. *See*

8 C.F.R. §§ 1003.19(a); 1236.1(d)(1). Petitioner received a written decision detailing the

basis for his custody determination. (Gov't Ex. 1 at 95.) The Court thus finds many of

Petitioner's general due process challenges to his detention lack merit, including Petitioner's arguments regarding ICE's initial decision to take him into custody and the notice and time he was given to prepare for his bond hearing before the IJ (Count Two). The Court also finds that because Petitioner is currently detained pursuant to Section 1226(a), his arguments that the separate custody determination made by the state court judge in his criminal case should somehow control or that his civil detention is tantamount to punishment (Counts Six, Seven, Nine, Ten, and Eleven, Am. Pet. at 13-15) fail. *See Denmore*, 538 U.S. at 526 ("[T]he Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings.").

### C. The IJ's Discretion

To the extent the Amended Petition can be interpreted as an attack on the IJ's individual determination that Petitioner presented a danger to persons and/or property and was thus not entitled to bond,[6] the Court declines to revisit this decision. As stated above, Section 1226(e) circumscribes the Court's authority to review the IJ's discretionary decision to deny Petitioner bond. *Melie I. v. Sec'y of Homeland Sec.*, No. 18-cv-1657 (ECT/HB), 2019 WL 3292070, at *4 (D. Minn. Jan. 7, 2019) [hereinafter "*Melie I. I*"], *report and recommendation accepted in part, rejected in part sub nom. Melie I. v. McAleenan*, 2019 WL 2367161 (D. Minn. June 5, 2019) [hereinafter "*Melie I. II*"]; *see also Darko v. Sessions*, 342 F. Supp. 3d 429, 433 (S.D.N.Y. 2018) ("Section 1226(e) thus

---

[6] *See* Counts One and Four, where Petitioner argues that the Government has engaged in an "arbitrary abuse of power" by committing him to civil detention when it was "unsupported by substantial evidence." (Am. Pet. at 10, 12.)

insulates from federal judicial review any 'discretionary judgment' of the Attorney General (i.e., the immigration courts) regarding bond.").

Section 1226(e), however, does not preclude "challenges [to] the statutory framework that permits [the alien's] detention without bail." *Jennings*, 138 S. Ct. at 841 (quoting *Denmore*, 538 U.S. at 516); *see also Melie I. I*, 2019 WL 3292070, at *4 ("Put another way, the Court cannot review whether the IJ was correct in determining that Petitioner should be detained because he is dangerous, but it may review whether the IJ applied the correct legal standards in making that decision.") (citation omitted). Petitioner's constitutional claims fall within this category and will be addressed by the Court.

### D. Burden of Proof and Evidentiary Standard

Petitioner returns to the burden of proof at his bond hearing throughout his Amended Petition, arguing that the IJ impermissibly placed the burden on him to demonstrate that he should be released. (*See* Counts Two, Three, Five,[7] Am. Pet. at 10-13.) His request for relief also homes in on this issue: Petitioner's requested alternative relief to release from custody is a new bond hearing where the burden would shift to the Government to prove by clear and convincing evidence that he is a danger to the community and/or is a flight risk, and thus should remain in custody pending a final decision on whether he may remain in the United States. (*Id.* at 2.)

---

[7] While Petitioner also writes in Count Five that he is treated differently than pretrial criminal detainees and thus was not provided with equal protection of the law, the Court interprets Petitioner's arguments as an attack on the burden of proof applied to him at his bond hearing. (*See* Am. Pet. at 6-7.)

The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint— lies at the heart of the liberty that [the Fifth Amendment's Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.  "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."  *Reno v. Flores*, 507 U.S. 292, 306 (1993); *accord Denmore*, 538 U.S. at 523.  "[D]ue process requires 'adequate procedural protections' to ensure that the government's asserted justification for physical confinement 'outweighs the individual's constitutionally protected interest in avoiding physical restraint.'"  *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011) (quoting *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 950 (9th Cir. 2008)).

Section 1226(a) is silent as to whether an alien or the Government is assigned the burden of proof at bond hearings before an IJ.  The Government, however, acknowledges that based on the BIA's interpretation of the statute and corresponding federal regulations, IJs considering bond redeterminations place the burden of proof on aliens to justify their release by demonstrating they are not a danger to the community or a flight risk.  (Gov't's Resp. at 11 (citing *Matter of Adeniji*, 22 I. & N. Dec. 1102, 1110-11 (BIA 1999); *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006).)  Courts, including the Supreme Court, further recognize this reality.  *See, e.g.*, *Preap*, 139 S. Ct. at 960 (writing that at a bond hearing under Section 1226(a), the alien "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community");

11

*Hernandez-Lara v. Lyons*, 10 F.4th 19, 27 (1st Cir. 2021) ("Accordingly, under current BIA precedent, a noncitizen detained under section 1226(a) must demonstrate to the satisfaction of the Immigration Judge that he or she merits release on bond even though section 1226(a) does not explicitly contain such a requirement.") (internal quotations omitted).

The Government first asks the Court to deny the Amended Petition on the basis that the statutory and regulatory framework was followed in this case and that the BIA is entitled to *Chevron*[8] deference in its interpretation of Section 1226(a) in assigning aliens the burden. (Gov't's Resp. at 11-14.) "Regardless of whether or not *Chevron* deference applies to the BIA's interpretation of the statute," however, "the issue before the Court is whether the Constitution requires the government to bear the burden of proof" in these bond hearings. *Pensamiento v. McDonald*, 315 F. Supp. 3d 684, 693 (D. Mass. 2018); *accord Pedro O. v. Garland*, No. 20-cv-2568 (ECT/KMM), — F. Supp. 3d —, 2021 WL 3046799 (D. Minn. June 14, 2021); *Melie I. I*, 2019 WL 3292070, at *5.

The Court thus enters into an area of unsettled law. In *Jennings*, the Supreme Court rejected the Ninth Circuit's statutory interpretation that Section 1226(a) requires periodic bond hearings every six months where the Government would need to prove by clear and convincing evidence that an alien's continued detention is necessary, holding that "[n]othing in § 1226(a)'s text . . . even remotely supports the imposition of either of those requirements." 138 S. Ct. at 847. The Supreme Court reversed and remanded the case to

---

[8] *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

the appellate court to consider the constitutional question on the merits. *Id.* at 851. In making this ruling, the Supreme Court declined to address whether due process mandates any burden on the Government at Section 1226(a) bond hearings.

The Eighth Circuit has not "squarely addressed" this constitutional challenge, *i.e.*, which party should bear the burden of proof at these bond hearings and "what amount of evidence would satisfy that burden." *Melie I. I*, 2019 WL 3292070, at *4. Other circuits presented with this question have found that due process requires the Government to carry some burden at a bond hearing before an IJ. *Hernandez-Lara*, 10 F.4th at 41 (holding that the Government must either (1) prove by clear and convincing evidence that the alien poses a danger to the community or (2) prove by preponderance of the evidence that they pose a flight risk); *Singh*, 638 F.3d at 1205 (holding that the Government must carry the burden at bond redetermination hearings by clear and convincing evidence); *see also Velasco Lopez v. Decker*, 978 F.3d 842, 855-56 (2d Cir. 2020) (holding that in the context of prolonged detention under Section 1226(a), a bond hearing with the Government bearing the burden of proving dangerousness or risk of flight by clear and convincing evidence was necessary);[9] *but see Borbot v. Warden Cty. Corr. Facility*, 906 F.3d 274, 276-80 (3d Cir. 2018) (holding that when a petitioner did not challenge the constitutional adequacy of his

---

[9] In *Velasco Lopez*, the Second Circuit declined to "establish a bright-line rule for when due process entitles an individual detained under § 1226(a) to a new bond hearing with a shifted burden." 978 F.3d at 855 n.13. In making this determination, the court noted that the petitioner's 15-month incarceration without a bond hearing where the Government justified his detention violated due process and that the Supreme Court has held that aliens ordered removed under 8 U.S.C. § 1231 "cannot be detained indefinitely, and a presumptively constitutional period of detention does not exceed six months." *Id.* (citing *Zadvydas*, 533 U.S. at 701).

initial bond hearing, he was not entitled to a new bond hearing with a shifted burden after he asserted a due process challenge on the duration of his detention).[10]

A number of district courts have similarly concluded that the burden should shift to the Government. *See, e.g.*, *Al-Sadeai v. U.S. Immigration & Customs Enforcement*, No. 21-cv-00296-GPC-MDD, — F. Supp. 3d —, 2021 WL 1978474, at *5 (S.D. Cal. May 18, 2021) ("Accordingly, the Court finds that noncitizens still face such a significant possible deprivation of liberty at the time of their initial bond hearing under Section 1226(a) that the Due Process Clause requires the burden of proof to be placed on the Government."), *appeal filed*, No. 21-55747 (9th Cir. July 16, 2021); *Pensamiento*, 315 F. Supp. 3d at 692; *Darko*, 342 F. Supp. 3d at 436.

In *Melie I. I*, a court in this district made a similar conclusion, and held that "due process requires the government to prove by clear and convincing evidence that detention is justified at a § 1226(a) bond hearing." 2019 WL 3292070, at *7. This holding was not adopted, however, as by the time the district court ruled on the objections, there was a question as to whether the petitioner was still detained under Section 1226(a) as opposed to Section 1226(c). *Melie I. II*, 2019 WL 2367161, at *3 ("Given the nonfrivolous and potentially dispositive question of whether Melie I. is subject to mandatory detention—a question that is, at root, one of statutory construction—it would be premature to decide the constitutional question raised in the Report and Recommendation and in [the

---

[10] While the court in *Borbot* did not directly address a due process claim on the burden of proof issue, it did note that it "perceive[d] no problem" with requiring aliens to bear the burden of proof at their Section 1226(a) bond hearings. *Id.* at 279. A number of district courts in the Third Circuit have subsequently concluded that the *Borbot* decision supports the conclusion that the Government need not carry the burden of proof at those bond hearings. *See, e.g.*, *Gomez v. Barr*, No. 1:19:CV-01818, 2020 WL 1504735, at *3 (M.D. Pa. Mar. 30, 2020) (collecting cases).

Government's] objections.").   The district judge remanded the matter for the IJ to determine whether the petitioner was subject to mandatory detention under Section 1226(c) without comment on the legal conclusions made in the report and recommendation.  *Id.* at *3-4.  This Court nevertheless finds the analysis in *Melie I. I* instructive, as well as the majority of appellate and district courts that have considered this issue.

### 1. Allocation of Burden

As to the allocation of the burden, the Court finds particularly persuasive the First Circuit's in depth analysis of the Supreme Court's balancing test articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976) in determining what procedural protections are due to aliens, like Petitioner, detained pursuant to Section 1226(a).  *Hernandez-Lara*, 10 F.4th at 27-35. The Court in *Mathews* outlined three factors to consider when analyzing these due process challenges: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  424 U.S. at 335.

The *Hernandez-Lara* Court determined that the first *Mathews* factor weighed heavily in the petitioner's favor.  10 F.4th at 28-30.  It did so by initially relying on Supreme Court precedent highlighting the significant liberty interest in avoiding imprisonment.  *Id.* at 28 (collecting cases); *cf. Pedro O.*, 2021 WL 3046799, at *6 ("The private interest in

avoiding confinement is among the greatest there is."). Importantly, the Court also

acknowledged that aliens confined pursuant to Section 1226(a) have a significant liberty

interest notwithstanding the statutorily fixed nature of their detention, writing:

> We recognize that removal proceedings have an end point and
> that the liberty interest of a noncitizen detained under section
> 1226(a) may therefore be slightly less weighty than that of
> individuals facing indefinite and prolonged detention. But
> only slightly less: The exact length of detention under section
> 1226(a) is impossible to predict and can be quite lengthy.

10 F.4th at 29.

The First Circuit also found that the second *Mathews* factor, risk of erroneous

deprivation of liberty and probable value of shifting the burden, also weighed heavily in

the petitioner's favor. *Id.* at 30-32. It noted five facts that support weighing this factor in

favor of the alien: (1) aliens "have no right to be provided with counsel in immigration

proceedings and very often cannot obtain counsel on their own, particularly if they are

detained"; (2) "detained individuals will likely experience difficulty in gathering evidence

on their own behalf"; (3) aliens "subject to immigration detention often lack full

proficiency in English"; (4) "immigration law and procedures and the particular

preferences of individual IJs are likely much better known to government representatives

than to detainees"; and (5) "proving a negative (especially a lack of danger) can often be

more difficult than proving a cause for concern." *Id.* at 30-31.

Lastly, the *Hernandez-Lara* Court considered the third *Mathews* factor, the

Government's interest in detaining aliens pending the conclusion of removal proceedings.

*Id.* at 32-35. The Court did acknowledge that the "prompt execution of removal orders is

16

a legitimate governmental interest . . . which detention may facilitate." *Id.* at 32 (citations omitted); *see also Zadvydas*, 533 U.S. at 690 (acknowledging the Government's interests in ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community). It nevertheless concluded that Government's interest was slight. *Hernandez-Lara*, 10 F. 4th at 33.

Here, Petitioner is in a similar position as the petitioner in *Hernandez-Lara*, *i.e.*, an alien detained under Section 1226(a) and incarcerated alongside criminal inmates in a county jail. 10 F.4th at 28. Petitioner's interest in his personal freedom cannot be overstated. *See, e.g.*, *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary government action."); *Addington v. Texas*, 441 U.S. 418, 425 (1979) ("This Court repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.").

Further, Petitioner has signaled that he will continue to appeal his case should the BIA sustain the IJ's decision on his removability. (Am. Pet. at 4.) This increases the likelihood that his period of detention will be extensive. *See Jennings*, 138 S. Ct. at 860 (Breyer, J., dissenting) (stating that class members, who were pursuing asylum petitions and awaiting final orders of removal, had been detained for periods ranging from six months to 831 days); *Velasco Lopez*, 978 F.3d at 852 ("Detention under § 1226(a) is frequently prolonged because it continues until all proceedings and appeals are concluded . . . even where an individual has prevailed and the Government appeals.").

17

In sum, Petitioner "face[s] the prospect of months-long detention, a severe deprivation of liberty that is countenanced in only limited circumstances outside of the criminal context." *Al-Sadeai*, 2021 WL 1978474, at *5 (citing *Zadvydas*, 533 U.S. at 690). The Court thus finds that due to Petitioner's significant liberty interest, and because he was entitled to a bond haring under Section 1226(a), due process entitles him to a new bond hearing where the burden of proof is placed on the Government to justify his detention.

### 2. Quantum of Proof

As to the quantum of proof, the Court departs from the holding made in *Hernandez-Lara*, which split the quantum of proof depending on the Government's proposed basis for detention at a bond hearing. *See* 10 F.4th at 41 (holding that the Government must either (1) prove by *clear and convincing evidence* that the alien poses a danger to the community or (2) prove by *preponderance of the evidence* that they pose a flight risk). A court in this district has previously determined that due process requires the quantum of proof be clear and convincing evidence at bond hearings conducted pursuant to Section 1226(a). *See Melie I. I*, 2019 WL 3292070, at *7. That court concluded:

> The Supreme Court has plainly indicated "that due process places a heightened burden of proof on the State in civil proceedings" where the individual's interest is of particular importance and is more significant than a financial loss. *Cooper v. Oklahoma*, 517 U.S. 348, 363 (1996) (citations omitted). Here, an alien's liberty interest in being free from not just prolonged detention, but any detention, is of particular importance and far more significant than a monetary loss. On the other hand, the government's interests in preventing danger to the community and ensuring an alien's appearance at future proceedings—though also important—carry less weight, particularly considering that individuals apprehended pursuant

> to § 1226(a) are non-criminal aliens who, if released on bond,
> would be subject to conditions designated to protect the
> government's interests.

*Id.*; *cf. Omar M. v. Garland*, No. 20-cv-1784 (NEB/BRT), 2021 WL 3442337, at *5 (D. Minn. Mar. 29, 2021) (reasoning when considering a due process claim for an alien detained pursuant to Section 1226(c) that "[w]hen the government seeks to imprison someone in a civil context (a request made in only limited circumstances), such as civil commitment, the government bears the burden to justify its request by clear and convincing evidence."); *Marco A. C.-P. v. Garland*, No. 20-cv-1698 (JRT/TNL), 2021 WL 1976132, at *6 (determining for an alien detained pursuant to Section 1231(a) that "the possible injury to Petitioner—unnecessary deprivation of his liberty—is so substantial that it is improper to ask the individual to share equally with society the risk of error . . . [and] clear and convincing standard of proof provides the appropriate level of procedural protection.") (internal quotation omitted), *appeal filed*, No. 21-2605 (8th Cir. July 21, 2021).

The Court sees no reason to depart from the reasoning articulated in *Melie I. I.* Petitioner's interest in freedom from confinement necessarily requires the standard of proof to be clear and convincing evidence.

The Court further finds indirect support for shifting the burden and the heightened quantum of proof in the legal development of how this district treats due process challenges by aliens detained under different statutory provisions. Courts in this district previously declined to address the applicable standard of proof and which party should bear it when remanding 1226(c) cases for a bond hearing after prolonged detention. *See Abshir H. A. v.*

*Barr*, No. 19-cv-1033 (PAM/TNL), 2019 WL 3719467, at *9 (collecting cases); *see also Pedro O.*, 2021 WL 3046799, at *5 ("Several courts in this District have decided to leave all questions concerning the appropriate procedure for a bond hearing under § 1226(c) to the immigration judge in the first instance.") (citations omitted).  This has recently changed, with three courts in this district shifting the burden to the Government to justify continuing detention under a clear and convincing evidentiary standard.  *See Jamie M. v. Garland*, No. 21-cv-743 (NEB/BRT), 2021 WL 5567864, at *4-6 (D. Minn. Nov. 29, 2021); *Pedro O.*, 2021 WL 3046799, at *6-8; *Omar M.*, 2021 WL 3442337, at *4-7; *cf. Marco A. C.-P.*, 2021 WL 1976132, at *5-6 (requiring the Government bear the burden to justify detention by clear and convincing evidence in a Section 1231(a) bond hearing).

     In conclusion, the Court finds, consistent with a majority of the circuit and district courts that have considered this issue, that there was constitutional error in placing the burden of proof on Petitioner at his bond hearing before the IJ, and that due process requires the Government  prove by clear and convincing evidence that his detention is necessary to justify his confinement under Section 1226(a).

### 3. Prejudice

     Petitioner must also establish that the misallocation of the burden at the bond redetermination hearing was prejudicial.  To establish prejudice, Petitioner must show that the due process violation could have affected the outcome of his bond hearing before the IJ.  *See Bracic v. Holder*, 603 F.3d 1027, 1033 (8th Cir. 2010).  "In other words, Petitioner

must identify an error that potentially affects the outcome." *Melie I. I*, 2019 WL 3292070, at *7 (quotation omitted).

In this case, Petitioner was brought back into ICE custody after being charged with felony threats of violence involving domestic violence. (Van Der Vaart Decl. ¶¶ 23-24.) The record reflects that Petitioner presented 48 pages of documentary evidence in support of his request for release, including the criminal history of his 2020 misdemeanor and felony arrests, statements of support, and pictures of him with his children. (Gov't's Ex. 1 at 43-94.) Pursuant to BIA regulations, the IJ was to consider a number of factors in determining whether bond was appropriate, and, if so, the amount of the bond:

> (1) whether the alien has a fixed address in the United States;
> (2) the alien's length of residence in the United States; (3) the
> alien's family ties in the United States, and whether they may
> entitle the alien to reside permanently in the United States in
> the future; (4) the alien's employment history; (5) the alien's
> record of appearance in court; (6) the alien's criminal record,
> including the extensiveness of criminal activity, the recency of
> such activity, and the seriousness of the offenses; (7) the alien's
> history of immigration violations; (8) any attempts by the alien
> to flee prosecution or otherwise escape from authorities; and
> (9) the alien's manner of entry into the United States.

*In re Guerra*, 24 I. & N. at 40.

The IJ summarily denied bond after "full consideration having been given to the representations" of the Government and Petitioner. (Gov't's Ex. 1 at 95.) The IJ simply checked a box that the request for a change in custody be denied, writing only that Petitioner was a "[d]anger to persons/property." (*Id.*) The Government has not provided the representations made by the Department of Homeland Security at the hearing nor

specified the evidence on which the agency relied in making those representations.  Nor on this record can the Court determine what evidence the IJ specifically relied upon in making its summary conclusion to deny Petitioner's request for bond.

Though the Court can assume that the 2020 misdemeanor and felony arrests played a role in the IJ's decision making process, and though the Government asserts that this was the basis of the IJ's bond determination,[11] the Court cannot on this record assume that if the IJ had imposed a clear and convincing evidentiary burden on the Government that it would have made the same conclusion that Petitioner should remain detained on the grounds that he posed a danger to the community.  *See Singh*, 638 F.3d at 1205; *Melie I. I*, 2019 WL 3292070, at *7; *see also Doe v. Tompkins*, Civil Action No. 18-12266-PBS, 2019 WL 8437191, at *1 (D. Mass. Feb. 12, 2019) (finding that an alien having to prove that a misallocation of the burden at a Section 1226(a) would have made a difference is "inappropriate in the context of claims of improper allocations of the burden of proof in immigration bond hearings"); *cf. Omar M.*, 2021 WL 3442337, at *6 n.13 (in the context of a 1226(c) hearing the Court need not determine more when the petitioner alleged the erroneous burden of proof could have potentially affected the outcome).

The Government relies on *Maldonado-Velasquez v. Moniz*, 274 F. Supp. 3d 11 (D. Mass. 2017), in support of its assertion that Petitioner has "not even attempted to show he was prejudiced."  (Gov't Resp. at 19.)  In *Maldonado-Velasquez*, the Court declined to

---

[11] Petitioner appears to concede this point.  (*See* Am. Pet. at 2 (stating the IJ "sustained the previous custody determination on the basis that Petitioner's pending charges makes of him a danger to the community's public safety.").)

reach the merits of the constitutional argument as the petitioner in that case had not established he was prejudiced by the misallocation of the burden. 274 F. Supp. 3d at 13. But this case is distinguishable, as the petitioner in *Maldonado-Velasquez* had compiled a "lengthy record of arrests for violent crimes and drug offenses" and the court considering his habeas petition had the benefit of knowing the evidence the IJ relied upon when denying his bond, including evidence that the petitioner had ties to a violent gang. *Id.* at 12. While the allegations surrounding Petitioner's 2020 arrests and subsequent convictions are undoubtedly serious, other courts have found that when positive and negative evidence is presented at a bond hearing, prejudice is shown. *See, e.g.*, *Al-Sadeai*, 2021 WL 1978474, at *6 ("While it is not at all obvious that the IJ would come to a different conclusion if the burden of proof were shifted, the evidence presented does not foreclose the possibility.").

Considering the fundamental liberty interest at stake and the lack of clarity on which evidence the IJ specifically relied in her summary decision, the Court finds that Petitioner has established he was prejudiced by the misallocation of the burden of proof at his bond hearing. As such, the Court recommends granting the Amended Petition in part and remanding this matter to the IJ for a new individualized bond hearing where the Government shall bear the burden of proving by clear and convincing evidence that Petitioner's detention is necessary to protect the community and/or to prevent him from fleeing.

### E. Administrative Procedures Act Claim

Lastly, Petitioner argues in Count One that the decision to detain him was "arbitrary, capricious, an abuse of discretion, [and] not in accordance with the law," in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(C) ("APA").[12]    The Court has recommended granting the Amended Petition to the extent that Petitioner is requesting a new bond hearing at which the Government shall bear the burden of proof to justify his continued detention because he was denied due process at his bond hearing in March of 2021.    The Court finds this is the correct avenue for adjudicating Petitioner's claims because his right to due process affords him a bond hearing with the burden shifted.    Thus, further analysis of Petitioner's claims pursuant to the APA would be inappropriate.    *See Hernandez-Lara*, 10 F.4th at 45 ("Recognizing well-defined categorical rules in procedural due process cases is unsurprising from the standpoint of judicial and administrative efficiency.    Otherwise, every controversy would become two cases in one: a determination of the procedures required by due process followed by a resolution of the merits.    For detention pending the completion of removal proceedings, that inefficiency would be exacerbated because each case begins in an administrative proceeding, while habeas claims are heard in the district courts."); *Melie I. I*, 2019 WL 3292070, at *8 (finding that when the petitioner summarily alleged the IJ's decision was arbitrary and capricious without further evidence that the claim was waived and the due process analysis resolved the burden of proof issue); *cf. Tompkins*, 2019 WL 8437191, at *2 (not considering other

---

[12] As discussed *supra*, Petitioner also argues that his detention is an arbitrary and capricious abuse of power in violation of the Fifth Amendment.  (*See* Am. Pet. at 12.)

constitutional arguments made by petitioner "because the proper allocation of the burden of proof could well resolve this case").

## IV.  RECOMMENDATION

Based upon the record, memoranda, and the proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner's Amended Petition for Writ of Habeas Corpus (ECF No. 7) be **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

2. If this Report & Recommendation is adopted, an Immigration Judge shall provide Petitioner with an individualized bond hearing within 30 days of such order.  At the bond hearing, the Government shall bear the burden of proving by clear and convincing evidence that Petitioner's detention is necessary to protect the community and/or to prevent Petitioner from fleeing.

Dated: December ___29___, 2021                    _____s/Tony N. Leung_____
                                                  Tony N. Leung
                                                  United States Magistrate Judge
                                                  District of Minnesota


                                                  *Roberto M. D. v. Garland, et al.*
                                                  Case No. 21-cv-1343 (NEB/TNL)


### NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those

objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).